UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILFREDO PEREZ | Criminal No. 3:02cr7 (JBA)<br><br>March 4, 2021 |

**RULING GRANTING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Defendant Wilfredo Perez requests on an emergency basis that the Court reduce his life sentence to time-served in light of the COVID-19 pandemic, his medical conditions that make him particularly vulnerable to COVID-19, his history of rehabilitation, the excessive nature of his original sentence, and his father's deteriorating health. (Def.'s Emergency Mot. [Doc. # 1460] at 1.) The Government opposes, maintaining that Defendant is ill-suited for release in light of the gravity of his offenses. (Govt's Mem. in Opp. [Doc. #1468].) A virtual hearing on the motion was held on February 12, 2021. For the reasons that follow, Defendant's motion is GRANTED.

**I.    Background**

On June 29, 2004, a jury convicted Defendant of four crimes related to the murder of Theodore Casiano — conspiracy to commit interstate murder-for-hire, in violation of 18 U.S.C. § 1958 (Count One); interstate travel to commit murder-for-hire and aiding and abetting, in violation of 18 U.S.C. §§ 1958 & 2 (Count Two); violent crime in aid of racketeering and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(1) & 2 (Count Four); and causing death by use of a firearm during and in relation to a crime of violence and aiding

and abetting, in violation of 18 U.S.C. §§ 924(c), (j)(1) & 2 (Count Five).[1] (J. [Doc. # 1397] at 1.) The jury unanimously voted that he be sentenced to life imprisonment and refused to impose the death penalty. (Special Verdict Form [Doc. # 1080] at 15.) On September 28, 2005, Defendant was sentenced to a mandatory term of life imprisonment on Counts One, Two, and Four and a term of five years to run consecutively with the other sentences on Count Five. (*Id.*) Defendant is serving his sentence at Otisville FCI, where he has been for the last twenty-three years. FIND AN INMATE, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed Mar. 4, 2021). The Sentencing Reform Act of 1984 abolished the use of parole in the federal system, and Defendant has no scheduled release date. *See* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, §218(a)(5), 98 Stat. 1837, 2027 (repealing 18 U.S.C. §§ 4201-4218).

Defendant submits that his medical conditions (obesity, hypertension, sleep apnea, and arthritis) in light of the COVID-19 pandemic,[2] his history of significant rehabilitation during incarceration, the excessive nature of his sentence, and his father's health conditions create extraordinary and compelling circumstances that justify his release from incarceration. (Def.'s Mem. [Doc. # 1461] at 2.)

---

[1] Defendant was acquitted by the jury of Count Three, interstate facility murder-for-hire. (Verdict [Doc. # 1049] at 1.)

[2] COVID-19 is believed to spread mainly through close contact from person to person and therefore places those in congregate living settings, such as prisons, at increased risk of infection. *See* HOW COVID-19 SPREADS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last updated Oct. 8, 2020). Those with certain medical conditions, including obesity, are at increased risk for severe illness from the virus that causes COVID-19. PEOPLE WITH CERTAIN MEDICAL CONDITIONS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 22. 2021). Other medical conditions, including hypertension, may place individuals at increased risk for severe illness. (*Id.*)

On October 14, 2020, Defendant submitted his request for compassionate release to the Warden. (Email to Warden, Ex. J to Def.'s Mem. [Doc. # 1461-10].) The Warden formally denied his request on January 5, 2021. (Warden Denial, Ex. U to Reply [Doc. # 1469-2].) The next day, Defendant filed this emergency motion for release. (Def.'s Mot. at 1.)

## II. Legal Standard

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides that

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[3]

On March 26, 2020, the United States Attorney General urged the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," noting that the health risks posed by the pandemic likely constitute the "extraordinary and compelling reasons" required for compassionate release. Att'y Gen. William Bar, *Memorandum from the Attorney General to Direct of Bureau of Prisons* at 1 (Mar. 26, 2020).

In granting authority to the federal district courts to decide motions pursuant to 28 U.S.C. § 3582(c)(1)(A), Congress intended to expand, expedite, and improve the process of compassionate release.[4] *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). In holding

---

[3] Incarcerated persons previously could only seek compassionate release upon motion of the Bureau of Prisons (BOP) which the First Step Act of 2018 amended to permit inmates to seek relief directly from the courts upon satisfaction of certain administrative exhaustion requirements.

[4] "Compassionate release is a misnomer" as the modifications to § 3582(c)(1)(A) under the First Step Act "in fact speak[] of sentence reductions." *Brooker*, 976 F.3d at 237.

3

that district courts are not constrained by § 1B1.13 Application Note 1(D), which makes the BOP "the sole arbiter of whether most reasons qualify as extraordinary and compelling," the Second Circuit described the discretion of federal district courts to consider a wide range of factors in assessing a motion for compassionate release, including a defendant's "age at the time of [the] crime, . . . the injustice of [a] lengthy sentence," and "the present coronavirus pandemic," *Id.* at 238.[5] Courts therefore may exercise their discretion to determine if the confluence of all the issues raised in defendants' motions for release warrants granting them. *See also United States v. McCoy*, No. 20-6821, 2020 WL 7050097, at *9 (4th Cir. Dec. 2, 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts[,] . . . district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.") (internal quotations omitted); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("[F]ollowing the Second Circuit's lead, [we hold that] where incarcerated persons file motions for compassionate release, federal judges may [] have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020) (agreeing with the Second Circuit that district courts have full discretion to define what constitutes "extraordinary and compelling" circumstances).

**III.   Discussion**

There are three questions before the Court: first, whether Defendant has satisfied the administrative rights exhaustion requirement; second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction; and third, whether a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).

**a.   Administrative Exhaustion**

---

[5] "[T]he only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation *alone* shall not be considered an extraordinary and compelling reason." *Id.* at 237-38 (emphasis in original) (internal quotations omitted).

In order to petition the Court directly for relief, Mr. Perez must prove that he has exhausted the administrative rights remedies available to him by petitioning the Warden for release and having that request denied or remaining pending for at least 30 days. 18 U.S.C. § 3582(c)(1)(A). At the hearing, the Government appropriately conceded that Mr. Perez has satisfied this requirement. (Tr. [Doc. # 1473] at 4-5.)

## b. Extraordinary and Compelling Circumstances

Defendants with documented medical conditions that place them at an increased risk of severe illness from the virus that causes COVID-19, in light of the ongoing pandemic, can satisfy the requirement for extraordinary and compelling circumstances. *See, e.g.*, *United States v. Gil-Grande*, 3:16-cr-19 (VAB), 2020 WL 5868339 (D. Conn. Oct. 2, 2020) ("[N]umerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute 'extraordinary and compelling reasons' warranting relief."); *United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The Court accordingly finds that, in light of the heightened medical risk presented to Mr. Hernandez by the COVID-19 pandemic, there are extraordinary and compelling reasons to reduce Mr. Hernandez's sentence."); *United States v. Campagna*, 2020 WL 1489829, at *3, --- F. Supp. 3d --- (S.D.N.Y. 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify the Defendant's sentence.")

Defendant is clinically obese with a body-mass index between 32.5 and 32.7. (Reply [Doc. # 1469] at 6.) The CDC recognizes obesity as a condition that places one at increased risk of severe illness due to COVID-19. PEOPLE WITH CERTAIN MEDICAL CONDITIONS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Feb. 9. 2021). Moreover, Defendant's hypertension may place him at an increased risk for severe illness. *Id.* Based on currently available scientific evidence, his remaining documented chronic

5

medical conditions do not correlate with an increased risk of severe COVID-19 illness. *See id.* In addition, as an inmate, his risk is also elevated by the congregate living setting in prison where Defendant largely lacks the means to take self-protective measures like social distancing and timely COVID-19 testing.[6] GUIDANCE FOR SHARED OR CONGREGATE HOUSING, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/shared-congregate-house/guidance-shared-congregate-housing.html (last updated Dec. 31, 2020).

Given the COVID-19 pandemic and Mr. Perez's documented medical conditions that place him at risk of experiencing severe illness from COVID-19, the Court finds that he has demonstrated extraordinary and compelling reasons justifying release. At the hearing, the Government advised it no longer disputed this conclusion. However, even when extraordinary and compelling reasons are present, a defendant is not automatically entitled to release. Rather, the Court must evaluate the factors set forth in 18 U.S.C. § 3553(a) and determine whether a reduction in sentence is appropriate given those considerations.

c. **Section 3553(a) Factors**

The Section 3553(a) factors this court to considers include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
   a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b. To afford adequate deterrence to criminal conduct;
   c. To protect the public from further crimes of the defendant . . .

---

[6] In his Reply, Defendant presents the declaration of Angelica Angiulli, M.D., a board-certified emergency medicine physician who has reviewed Defendant's BOP medical records. (Dr. Angiulli Declaration, Ex. T to Reply [Doc. # 1469-1].) Dr. Angiulli noted that Defendant was documented as having a non-productive cough, a primary symptom of COVID-19, on October 21, 2020. Despite this, Defendant's medical records show that his most recent COVID-19 test was on June 3, 2020 despite his symptomatic indicator in October, which Defendant claims shows that the BOP is not taking reasonable safety measures to protect Defendant from exposure to COVID-19.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Because Mr. Perez's sentence was mandatory, this is the Court's first opportunity to functionally weigh the § 3553(a) factors in his case. *See United States v. Somerville*, 463 F. Supp. 3d 585, 588-89 (W.D. Pa. 2020) (finding that the mandatory minimum sentence imposed by the Armed Career Criminal Act precluded the court from considering the defendant's substantial mitigating circumstances, and those factors weighed in favor of compassionate release given the nature of his offense, his eight years of incarceration, his substantial rehabilitation, and his difficult upbringing).

> *i.     Nature and Circumstances of the Offense and Characteristics of the Defendant*

Defendant was convicted of procuring the murder of Theodore Casiano to protect his drug distribution operation. Mr. Perez arranged to have out-of-state killers hired to kill Mr. Casiano for $6,000, which they did in Hartford in broad daylight, shooting him fourteen times at point-blank range. The seriousness and gravity of his offense are obvious.

At the penalty phase, after the jury had found Defendant guilty of this murder-for-hire, the jury found numerous mitigating factors that weighed in his favor and against the death penalty. For instance, the jury found that Mr. Perez showed "kindness and concern for other people in his community," rescued his son from an abusive situation, was "a loving father, uncle, son, and brother," was "a model prisoner" who "has continually shown respect for prison staff and . . . ha[s] aided staff in creating a safe and orderly environment." (Special Verdict Form [Doc. # 1080] at 6-11.) The effect of these factors supported the jury's verdict of life without the chance for release, and no death penalty, the only other statutory alternative. (*See id.* at 14-18.)

The record for this motion shows that Mr. Perez has continued to demonstrate these positive characteristics. He continues to be known as an industrious and motivated inmate, having taught himself an electrical trade during his incarceration that enabled him to repair numerous appliances for the BOP, ultimately saving it thousands of dollars. (BOP Progress

7

Report, Ex. C to Def.'s Mem. at 2.) Mr. Perez has also dedicated himself to mentoring inmates, with one inmate testifying at the hearing that his own successful reintegration after his release from prison was due to Mr. Perez's mentorship. (Tr. at 53-55.) Several other of Mr. Perez's mentees expressed similar sentiments. (*See* Ex. U to Reply; Ex. V to Reply [Doc. # 1469-3]; Ex. X to Reply [Doc. # 1469-5]; Ex. Y to Reply [Doc. # 1469-6].) Prison officials write in Mr. Perez's BOP Progress Report that he "maintains an excellent rapport with staff and inmates" and "is respectful and always willing to help." (BOP Progress Report at 4.) Mr. Perez also demonstrates continuous positive involvement with his family, particularly his only son Christian, notwithstanding their physical separation.[7]

In his letter to the Court and in his testimony at the hearing, Mr. Perez explained that he has been motivated to engage in this kind of work as a means of atoning for his past crimes. (*See* Def.'s Letter, Ex. D to Def.'s Mem.; Tr. at 82-83.) He stated, "Every single day I get up, and in Teddy's memory, . . . all I do is try to help every person in here because it's a way for me to pay for my crime." (Tr. at 82-83.) Mr. Perez's expressions of remorse and acceptance of full responsibility for causing the murder of Mr. Casiano were unquestionably sincere and deeply felt.

    ii.    *The Need for the Sentence Imposed*

Mr. Perez was sentenced to life without chance of release as required by 18 U.S.C. § 1958. Although his life sentences are mandatory, the mandatory component does not bar relief under the First Step Act. *See, e.g.*, *United States v. Rodriguez*, --- F. Supp. 3d ---, 2020 WL 5810161 (S.D.N.Y. Sept. 30, 2020) (granting compassionate release to a prisoner serving a mandatory sentence of life without the possibility of parole for murder of a government informant); *United States v. Rodriguez*, 451 F. Supp. 3d 392 (E.D. Pa. 2020) (granting compassionate release to a defendant serving a twenty-year, mandatory-minimum sentence for drug distribution and unlawful firearm possession); *United States v. Somerville*, 463 F.

---

[7] His son, now 34 years old, testified that his father has been his inspiration.

Supp. 3d (granting compassionate release to defendant serving a fifteen-year, mandatory-minimum sentence for drug and firearm offenses). *See also United States v. Rose*, --- Fed App'x ---, 2021 WL 728683 (2d Cir. Feb. 25, 2021) (The Court "is not bound by[] the mandatory minimums that the defendant would face" if he were sentenced to the same offense today.). Although Mr. Perez was convicted of a most serious offense—procuring the murder of another—the gravity of the offense does not categorically preclude the Court from reducing his sentence. *See, e.g.*, *United States v. Gluzman*, Docket No. 7:96-cr-323, 2020 WL 4233049 (S.D.N.Y. July 23, 2020) (granting compassionate release to defendant convicted of the premeditated murder of her spouse and sentenced to life); *United States v. Tidwell*, 476 F. Supp. 3d 66 (E.D. Pa. 2020) (granting compassionate release to defendant sentenced to life for murder in furtherance of a continuing criminal enterprise); *United States v. Rodriguez*, 2020 WL 5810161 (granting compassionate release to defendant convicted of murdering a government informant and sentenced to life); *United States v. Rios*, Docket No. 3:94-cr-112 (JBA), 2020 WL 7246440 (D. Conn. Dec. 8, 2020) (granting compassionate release to defendant convicted of VICAR murder and sentenced to life). Although the seriousness of a defendant's offense must be considered when determining whether a reduction is appropriate, it should be weighed alongside the other § 3553(a) factors, particularly effective deterrence and public protection, and any other considerations the Court deems important.

In addition to Defendant's compelling record of rehabilitation, this case uniquely stands out because the two former Assistant United States Attorneys who prosecuted Defendant's case wrote an unsolicited letter to the Court sharing their view that "life behind bars is too harsh a sentence" for Mr. Perez, supporting Defendant's request for the Court to consider reducing his sentence in light of the fact that his conduct was not the "moving force behind the murder." (Letter From David Ring and Shawn Chen, Ex. G to Def.'s Mem. [Doc. # 1461-7].) Mr. Ring confirmed this view at the hearing, reiterating that Mr. Perez was not the

9

driving force behind Mr. Casiano's murder and asking that the Court take the mitigating facts and circumstances into account and impose a truly just sentence. (*See* Tr. at 42-46.) This view of excessive punishment was also reflected in a letter to the Court from one of the trial jurors after trial who wrote that she was "bothered [that] sentences imposed on hardened criminals are less severe than Mr. Perez'[s] and wish[es] that the wording 'no chance of parole' was not part of his sentence." (Juror Letter, Ex. F to Def.'s Mem. [Doc. # 1461-6])

The Government agrees that releasing Defendant after twenty-three years of incarceration does not present risk to the public. (Mem. in Opp. at 25.) ("Based on Perez's age, criminal history, and history while incarcerated, there is no reason to believe that he is now a danger to others or is at high risk of recidivism.") Mr. Perez's detailed release plan appears appropriate. (Release Plan, Ex. I to Def.'s Mem. [Doc. # 1461-9].) He would be released to live with his sister, a small business owner and licensed drug and alcohol counselor who has dedicated her life to helping people overcome their addictions. Ms. Nelida Perez spoke persuasively at the hearing about how she would provide Mr. Perez with housing, a job, and ongoing support so he can successfully reintegrate into the community. (*Id*; Letter of Ms. Perez, Ex. H to Def.'s Mem; Tr. at 49-53.)

Given the twenty-three years Mr. Perez has spent in prison for his drug dealing activity and hiring a hitman to murder a competitor, the likelihood that he does not pose a danger to the community, his release plan, his sincere remorse, and his ongoing efforts to atone for his wrongdoing, the Court concludes that a just punishment at this point does not require continued incarceration, especially given the heightened health risk of continued imprisonment.

### iii. *Sentencing Disparities*

In assessing whether release is appropriate, the Court also considers whether a reduction in a defendant's sentence would lead to substantial sentencing disparities with other criminal defendants convicted of similar conduct. Aside from the gunman, as to whom

the jury was undecided as to whether to sentence to death or life and who was thereafter given state life sentences for other murders, all of Mr. Perez's co-conspirators have either been released or are deceased. (Def.'s Mem. at 14.)

However, Mr. Perez's codefendants are not the only comparators for this analysis. Other individuals, convicted under the same statute as Mr. Perez, continue to serve their mandatory life sentences. Nothing in the language of the First Step Act precludes granting compassionate release to a defendant who received a statutory mandatory sentence but whose circumstances were found to be extraordinary and compelling such that it warranted a sentence reduction. *See supra* at 8-9. Nor does the First Step Act forbid granting compassionate release to those sentenced for murder. *See id.* The fact that other defendants continue to serve lengthy sentences for similar offenses therefore does not create impermissible sentencing disparities.

**IV. Conclusion**

After thorough consideration of Section 3553(a) factors, the Court concludes that continued incarceration of Mr. Perez, exposing him to potentially severe consequences of coronavirus infection is too harsh a sentence and in light of his extraordinary and compelling circumstances and prison record, his Motion for Compassionate Release [Doc. # 1460] is GRANTED. His sentence is hereby reduced to time served, and he shall be on supervised release for five years. Mr. Perez shall be released to the home of his sister, Ms. Nelida Perez in Vernon, Connecticut. He must comply with the applicable standard and mandatory conditions of supervised release, shall be on total quarantine for the first fourteen days following his release, and on home confinement with location monitoring for four months.[8] Special conditions of supervised release are that he shall participate in a mental health

---

[8] The technology to be used to monitor Mr. Perez's location is left to the discretion of the U.S. Probation Office.

11

counseling program approved by the U.S. Probation Office for which he shall pay the cost as he is financially able. He shall also perform 250 hours of approved community service.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of March 2021.